(November 30, 1917.)

## ELISHA STRONG, Respondent, v. OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Appellant.

[169 Pac. 179.]

RAILROADS—HIGHWAY CROSSINGS—FENCES AND CATTLE-GUARDS.

Under the provisions of sec. 2815, Rev. Codes, amended by chap. 223, Sess. Laws 1911, p. 706, it is the duty of a railroad company to maintain a cattle-guard at a highway crossing where it has fenced its right of way up to the highway, whether it has done so voluntarily or because required to fence by the statute.

[As to the necessity of a railroad company's fencing track in the absence of a statutory requirement to that effect, see note in 7 Am. Rep. 47.] -

APPEAL from the District Court of the Fifth Judicial District, for Bear Lake County. Hon. J. J. Guheen, Judge.

Action for damages. Judgment for plaintiff. *Affirmed.*

George H. Smith and H. B. Thompson, for Appellant.

A railroad company is not bound by the present statute to construct and maintain cattle-guards at all highway crossings in cities, and especially where there is no pleading or proof that at such places the road runs through or along inclosed or cultivated fields or inclosed lands. (*Bernardi v. Northern Pacific Ry. Co.*, 18 Ida. 76, 108 Pac. 542, 27 L. R. A., N. S., 796; *Reid v. San Pedro, L. A. & S. L. R. Co.*, 42 Utah, 431, 132 Pac. 253.)

Statutes creating a liability where none would otherwise exist must be strictly construed. (*Perkins v. Loux*, 14 Ida. 607, 95 Pac. 694; *Sherwood v. Stephens*, 13 Ida. 399, 90 Pac. 345.)

For authorities on the question of duty of railroad company to keep cattle-guard in condition, see notes in 36 L. R. A., N. S., 997; L. R. A. 1915B, 134.

In order to avoid absurd consequences we must conclude that the word "such" as repeatedly used by the legislature had reference to steam or electric railroads operated through or along inclosed or adjoining cultivated fields.

The statute does not provide either expressly or by implication in the title that the railroad company shall construct and maintain cattle-guards at places where it is not "required" to fence.    (*Hailey v. Huston,* 25 Ida. 165, 136 Pac. 212; *State v. Paulsen,* 21 Ida. 686, 123 Pac. 588; *State* v. *Forch,* 26 Ida. 755, 146 Pac. 110–112.)

Where one bases a right of recovery solely on a special statute creating a new liability, he must plead and prove the facts showing his right to recover under such statute.    (*Kelly v. Northern Pac. R. Co.,* 35 Mont. 243, 88 Pac. 1009; *Miley v. Northern Pac. R. Co.,* 41 Mont. 51, 108 Pac. 5; *Sherwood v. Stephens, supra.*)

T. L. Glenn, for Respondent, cites no authorities.

MORGAN, J.—This action was instituted by respondent to recover damages for the loss of two horses which were killed by one of appellant's trains.    The record discloses that on and prior to the 4th day of March, 1914, a certain public highway crossed appellant's railroad track in the city of Montpelier; that from a point about 1,000 feet south of the crossing a fence was maintained on each side of the right of way extending up to the crossing; that for some time prior to that date a cattle-guard had been maintained by appellant at the crossing, but had been, by its agents and servants, removed prior to the date above mentioned, and thereby left an opening between the right of way fences; that on the date above mentioned and while the track and right of way were left open to ingress from the crossing, respondent's horses strayed in and upon the right of way and track, from the public highway, and were struck and killed by one of appellant's passenger trains.    The jury returned a verdict for respondent for $275 and judgment was entered accordingly, from which this appeal is prosecuted.

Appellant contends there is neither allegation nor proof that its motive power was either steam or electricity and it is not, therefore, shown to be such a railroad company as is contemplated by sec. 2815, Rev. Codes, as amended by chap. 223, Sess. Laws 1911, p. 706, hereinafter quoted. Although there is no allegation or direct testimony that appellant's road was a steam or electric railroad, the sufficiency of the complaint was not questioned by demurrer and the case was tried upon the theory that its liability, if any existed, was that provided for in the statute above cited. It is entirely clear that appellant has not been misled, nor have any of its substantial rights been invaded, by the failure of respondent to allege and prove the motive power employed by it in operating its trains. Sec. 4231, Rev. Codes, provides: "The court must, at every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the parties and no judgment shall be reversed or affected by reason of such error or defect." Even if a court, in this state, is not bound to take judicial notice of such a well-known fact as that steam is the motive power employed by the Oregon Short Line Railroad Company, we would be prohibited, by the section above quoted, from reversing this case upon that point.

It is also urged that the evidence is insufficient to show that the horses entered upon the right of way through the opening left by the removal of the cattle-guard. One of the witnesses for respondent testified that about an hour before the accident he saw the horses on the highway very near the railroad crossing in question, and that he saw them upon the right of way at the time they were struck. This evidence is sufficient to warrant the jury in finding that the animals entered at the place where the cattle-guard had been removed.

Appellant seeks to avoid liability upon the ground that the place from which the cattle-guard was removed was within its yards and that such removal was necessary for the safety of its employees. It is true that testimony was offered tending to establish this contention, but there was a conflict in the evidence as to how far the yard extended, and, without

deciding that this would or would not be a good defense to an action of this kind, if true, we cannot say it was shown that the maintenance of the cattle-guard would endanger appellant's employees or be so inconvenient as to warrant its removal.   At most it was a question of fact which was submitted to the jury with an instruction the correctness of which has not been questioned.

Appellant further insists the evidence is insufficient to sustain the verdict in that it fails to show respondent made claim upon it for damages within thirty days after the horses were killed.   Sec. 2817, Rev. Codes, prior to its amendment by chap. 223, Sess. Laws 1911, required, as a prerequisite to an action of this kind, that a demand, in writing, be made upon the railroad company for compensation, within thirty days after the injury was sustained, but under the law as it now is, and was at the time this cause of action accrued, and was tried, six months, instead of thirty days, after the destruction of or injury to the property is the time fixed within which such demand must be made.   In this case respondent alleged, in his verified complaint, that within thirty days after his horses were killed he made written demand upon appellant for damages.   This allegation was not denied and the fact was, under our practice, thereby established.

The principal question involved in this appeal is whether or not sec. 2815, *supra,* imposes upon appellant the duty to maintain a cattle-guard at the point from which it had been removed, for respondent has neither alleged nor proven negligence upon the part of appellant aside from that which arises from its failure to conform to the statute.

If in enacting the amendment to sec. 2815 it was the intention of the legislature to require railroads to maintain cattle-guards at highway crossings only in cases where the statute requires them to fence up to the crossings, then this judgment must be reversed, because it was not shown that the railroad, up to the point where it crossed the highway, passed "through or along inclosed or adjoining cultivated fields or inclosed lands," such as the law specifies shall be protected by right of way fences, and we cannot assume that such was

the case, even though the right of way, at the point in question, was within the limits of the city of Montpelier. (*Bernardi v. Northern Pacific Ry. Co.*, 18 Ida. 76, 108 Pac. 542, 27 L. R. A., N. S., 796.)   If, upon the other hand, the legislative intent was that where a railroad is fenced up to a highway, whether required by statute to be so fenced or not, the company must maintain cattle-guards at the crossings, then the judgment should be affirmed, because the record discloses that appellant did fence the right of way up to the crossing. From a literal reading of the statute the duty to maintain cattle-guards seems to be governed by the fact of fencing to the highway, rather than by the statutory requirement so to do, and there is reason for this construction.   To fence a right of way and leave an opening where it crosses a highway is to invite animals, running loose in the public thoroughfare, to go upon the railroad track.   In such a case the fences along the sides of the right of way would not protect them, but would have a tendency to keep them at or upon the track, thereby greatly increasing their danger of injury or destruction.   Moreover, the legislative intent clearly appears from the language of the amendment to sec. 2815, made by the Session Laws of 1911, heretofore cited.   That section originally provided:

"Every railroad company operating any steam or electric railroad in this state, shall erect and maintain lawful fences not less than four feet high on each side of its road, where the same passes through, along or adjoining inclosed or cultivated fields or inclosed lands, with proper and necessary openings and gates therein, and farm crossings; and also construct and maintain cattle-guards at all highway crossings where fences are required as aforesaid, suitable and sufficient to prevent horses, . . . . cattle, mules or other animals from getting on the railroad. . . . . "

The amendment changed the latter portion' of the above-quoted law and caused it to read as follows: "and also construct and maintain cattle-guards suitable and sufficient to prevent horses, cattle, mules or other animals from getting

on such railroads, at all highway crossings where such railroad is fenced up to such highway crossing. . . . . ''

It will be observed that under the original statute it was made the duty of the railroad company to construct cattle-guards at crossings in parts of the country, only, where it was required to fence its right of way. By the language of the amendment it is clear the legislature intended that railroad companies be required to maintain cattle-guards at all points where the right of way is actually fenced up to a highway without regard to whether the fencing is done voluntarily or is required by statute.

The section under consideration, as amended, further provides that until such fences and cattle-guards shall be duly and properly made and maintained the railroad company shall be liable, in a civil action, to any person who sustains loss or damage by the killing or injury, by the company in the operation of its engines or cars, of any domestic animal, which has been permitted to come upon the right of way or railroad track by reason of its failure to construct and maintain fences and cattle-guards as required, whether the persons operating or in charge of the engines or cars are guilty of negligence or not.

The judgment appealed from is affirmed. Costs are awarded to respondent.

Budge, C. J., and Rice, J., concur.