## MURDOCK v. MURDOCK et al.

Where the plaintiff was the step-mother of the defendants by whom she was supported, and for whom she performed domestic services, for the value of which she sued the defendants: *Held*, that as she stood in "*loco parentis*" to defendants, the law does not imply any contract to pay for such services.

All the circumstances must be considered to ascertain what were the expectations of the parties, *existing while the relation continued*. Nothing occurring afterwards, or which may have led to a separation, can convert that into an implied contract which was not so before.

APPEAL from the District Court of the Tenth Judicial District, County of Sutter.

Plaintiff brought this action in the Court below to recover the sum of two thousand eight hundred and fifty dollars, the alleged value of her labor and services from November 1, 1853, to February 1, 1856.

This was an action brought to recover compensation for certain services, and the only question presented was whether the services were gratuitous or not. On the trial, the defendant asked the Court to instruct the jury as follows:

"That if the jury believe the plaintiff entered the family of defendants not as a hired woman, but as the mother of the family, upon the invitation of the defendants to make their house her home; and her services were not rendered upon any contract of hire, express or implied, then they must find for the defendants."

This instruction the Court refused to give, and the defendants excepted. The Court then gave the following instruction:

"If the jury believe that the services rendered by the plaintiff to the defendants were worth more than her support and maintenance, they should find for the plaintiff in such sum as they may deem just, from the evidence. The jury should take into consideration the ability of the plaintiff to perform the labor, the value of such services, and the circumstances of her being in their, the defendants', service."

To the giving of this instruction the defendants excepted.

The plaintiff was the step-mother of the defendants, by whom they were brought up. The defendants emigrated from Ireland to the United States, and resided in the State of Arkansas. They sent for their step-mother and her children, and paid their expenses, and supported them after their arrival. The family

resided together in Arkansas for some time, and then came together to California; and the defendants, the plaintiff, and her two sons, and her daughter, resided together, the plaintiff as mother of the family, until a difference occurred in reference to a note given by the son-in-law of plaintiff, when plaintiff left the house of defendants and went to live with her married daughter, and afterwards brought this suit to recover the value of her services performed in this State.

Judgment for plaintiff for one thousand dollars and costs. Defendants appealed.

*Stephen J. Field* for Appellants.

The Court below erred in refusing the instruction to the jury requested by the defendants. Dye *v.* Kerr, 15 Barbour, 445; Williams *v.* Hutchinson, 5 ib., 123; Andrews *v.* Foster, 17 Vt., 556; Guild *v.* Guild, 15 Pick., 130; Weir *v.* Weir, 3 B. Monroe, 647; King *v.* Low, 1 B. & Ald, 179; Defranc *v.* Austin, 9 Penn., 310.

The Court below erred in the instruction which it gave to the jury.

*G. N. Swezy* for Respondent.

Not one of the authorities cited by the appellants presents a parallel case to the one at the bar.

In this case the conduct of the defendants compelled the plaintiff to leave their house, while in the cases cited, the claimants were not coerced, nor ever left the family into which they went to reside. In this case there was a request to come and live with and work for the defendants; in those, the question is not raised. In this, there was a prior obligation due from the defendants to the plaintiff, to wit : the rearing and education of the defendants; in those, there are no considerations of this nature. Yet the broad principle is laid down in those cases, " that an implied contract, in such cases, is inferred from the conduct, situation, or mutual relations, of the parties, and is enforced by the law on the ground of justice." 3 B. Munroe Ky. R., 648.

The case cited from the Pennsylvania Reports by the appellants, establishes the rule that rendering of service implies obligation to pay, and that it is incumbent on the defendant to rebut such presumption.

The case cited from Massachusetts, states that the Court are divided on that proposition. Aside from this consideration those cases only present the question as to what circumstances shall be evidence of an implied promise to pay.

If she is entitled to recover at all, under the restriction of the Court's instruction, then it was clearly proper to refuse the defendant's instruction ; as it was not adapted to the circumstances

of the case, and must have operated to defeat all recovery. It is too abstract to meet the circumstances of the case at bar.

BURNETT, J., after stating the facts, delivered the opinion of the Court—MURRAY, C. J., concurring.

There is, perhaps, no class of cases, assumed to be based upon implied contracts, that has more embarrassed Courts and juries, than cases arising between relations. These cases are always unfortunate, and from the delicacy of the relationship existing among the parties, it is often extremely difficult to arrive at their true intentions. There is so great a variety in the circumstances of different cases, that it is difficult to lay down general rules. Still, I think some rules may be established.

In the case of Andrews v. Foster, 17 Vt. R., 560, it was held that it was incumbent upon the plaintiff "to show that at the time, it was expected by both parties that he should receive such compensation, or that the circumstances under which the services were performed, were such that such expectation was reasonable and natural." It was also held in that case "that the law in such cases will not ordinarily imply a promise" on the part of either party.

But the Courts of New York have gone further, and require either an express contract, or an expectation on both sides, that compensation should be made. In the case of Williams v. Hutchinson, 5 Barbour, 122, it was held that, if an individual does, in fact, support his step-child as a member of his family, standing in loco parentis to him, the law does not imply a promise on his part to pay for the services of the child, nor will it permit a recovery therefor, unless an express promise is shown, or something to prove that compensation was expected on both sides. "The family relation, or compact, is not that of service on the one hand, or protection and support on the other, for pecuniary reward." The same doctrine is laid down in the case of Dye v. Kerr, 15 Barbour, 444.

So the same doctrine is sustained in the case of Defranc v. Austin, 9 Penn. Rep., 310. The Court was requested to charge the jury, that under the evidence, the plaintiff could not recover. But the Court left it to the jury, to determine the value of his labor, beyond his boarding, schooling, and clothing, and that amount they might find for the plaintiff, upon an implied contract, although they they were satisfied that the parties had no agreement. To this instruction we cannot accede. It was ruled in Juives v. Parsons, 5 M. & S., 357, "that the performance of labor generally, by one for another, raises an implied assumpsit that will be compensated; but this implication may be rebutted by proof of circumstances showing such a relation between the parties as repels the idea of contract." Burnside, Justice.

In cases where an express contract can be shown, there can

arise no difficulty. If no specified amount is mentioned, then a reasonable compensation must be given. But where the right of the plaintiff to recover rests upon an alleged implied contract, all the circumstances of the case must be considered, to ascertain what were the expectations of both the parties *existing while the relation continued.* No circumstances occurring afterwards, or which may have led to a separation, can convert that into an *implied contract,* that was not so before. In this particular case, the Court cannot inquire into the merits of the controversy between the parties, in reference to the note executed by the son-in-law. That is a matter outside of the case, and of too delicate and complex a character, for a Court of Justice. The defendants may have been guilty of a violation of the pure rules of morality, but such wrongs cannot be redressed in Courts of Law.

The instruction asked by the defendants was entirely correct, and should have been given; while that given by the Court was erroneous. Under the proof in this case, it is difficult to see how the plaintiff could recover. There would seem to have been no mutual expectation of any compensation on either side. The evidence clearly negatives such an idea. The plaintiff did not occupy the position of a servant in the family, and was not so treated by their friends and acquaintances. And where a party sustains to others a certain relation, and assumes a certain position, inconsistent with the claim set up, the proof should either show an express contract, or conclusive circumstances from which a contract might be justly implied.

I think the judgment of the Court below should be reversed, and the cause remanded for further proceedings.